**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| WILLIAM APUZZO, and<br>ROSEMARIE APUZZO,<br>*Plaintiffs*,<br><br>v.<br><br>KARL STORZ ENDOSCOPY – AMERICA, INC.,<br>*Defendant*. | No. 3:25-cv-01657-MPS |

**RULING ON MOTIONS TO DISMISS**

## I. Introduction

Plaintiffs William Apuzzo and his wife Rosemarie Apuzzo bring this action against Defendant KARL STORZ Endoscopy – America, Inc. (hereinafter "STORZ") to recover damages allegedly suffered in connection with the failure of a cystoscope sheath inserted in Mr. Apuzzo during a routine urological procedure. Mr. Apuzzo asserts one product liability claim with multiple theories under the Connecticut Product Liability Act ("CPLA"), Conn. Gen. Statutes § 52-572m, *et seq*. (Count One). Mrs. Apuzzo asserts a derivative claim for loss of consortium as a result of Mr. Apuzzo's injuries (Count Two). Defendant now moves to dismiss both counts for failure to state a claim under Fed. R. Civ. R. 12(b)(6). ECF No. 40. For the reasons that follow, Defendant's motion is GRANTED IN PART and DENIED IN PART.

## II. Factual and Procedural History

### A. Factual Background

The following facts are drawn from Plaintiffs' amended complaint, ECF No. 36, and are accepted as true for the purpose of this motion.

STORZ is engaged in the design, manufacture, distribution, and sale of a 22 French cystoscope sheath (hereinafter "cystoscope sheath"). ECF No. 36 ¶ 14. The cystoscope sheath is a hollow metal sheath that is inserted into the bladder and allows other surgical instruments, including cystoscopes, to pass through a patient's urethra and bladder during urological procedures. *Id.*

On September 29, 2023, Mr. Apuzzo underwent a routine cystoscopy at Yale New Haven Health, where the cystoscope sheath was inserted into Mr. Apuzzo as intended and in accordance with instructions. *Id.* ¶ 2. During the procedure, the device fractured and its tip detached inside Mr. Apuzzo's bladder. *Id.* ¶ 3. The metal fragment had to be removed through an invasive surgical incision to his abdomen, causing Mr. Apuzzo serious and permanent injuries. *Id.* These injuries include permanent scarring and disfigurement, emotional distress, pain and suffering, ongoing medical expenses, loss of enjoyment of life, and loss of earning capacity. *Id.* ¶¶ 30-34.

At the time Defendant placed the cystoscope sheath into the stream of commerce, it had "a propensity for metal fatigue and fracture during normal and intended cystoscopy use." *Id.* ¶ 19. Fractures such as the one that happened here do "not ordinarily occur in the absence of a defect when the device is used as intended." *Id.* Before Mr. Apuzzo's procedure, Defendant "had received complaints and other notice, including from healthcare providers, of metal fatigue and fracture occurring in the [cystoscope sheath] during cystoscopy." *Id.* ¶ 29(o). Defendant continued to market and distribute the device, and did not "take reasonable steps to investigate, recall, restrict, or otherwise correct the defect." *Id.* ¶ 29(p).

Mrs. Rosemarie Apuzzo is the lawful spouse of Mr. Apuzzo. *Id.* ¶ 7. As a result of her husband's injuries, Mr. and Mrs. Apuzzo's marriage has been "impaired and diminished." *Id.* ¶ 37. Moreover, Mrs. Apuzzo "has suffered and will continue to suffer" the loss of Mr. Apuzzo's care,

companionship, and consortium, as well as his assistance in the household and other aspects of married life. *Id.* ¶ 38.

B. Procedural History

On September 8, 2025, Plaintiffs filed an initial complaint in Connecticut Superior Court, Judicial District of New Haven. ECF No. 1 ¶ 1. Defendant then removed the case to this Court under 28 U.S.C. §§ 1441 and 1446, *id.,* and filed a motion to dismiss for failure to state a claim under Fed. R. Civ. R. 12(b)(6). ECF No. 19 at 1.

On January 5, 2026, the Court issued an order allowing plaintiffs to file an amended complaint on or before January 19, 2026. ECF No. 28. In its order, the Court the suggested the complaint "would benefit from more factual specificity." *Id.* Plaintiffs then submitted an amended complaint on January 19, 2026, ECF No. 36, and Defendant again moved to dismiss. ECF No. 40. Plaintiffs opposed the motion. ECF No. 43.

## III. Legal Standard

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and "must draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). But "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014).

## IV. Discussion

### A. Count One (CPLA)

The Connecticut Product Liability Act (CPLA), Conn. Gen. Stat. § 52-572m, *et seq.*, is the exclusive remedy for all product liability claims in Connecticut. *Winslow v. Lewis-Shepard, Inc.*, 212 Conn. 462, 471 (1989). The CPLA consolidates common law product liability claims into a single form of action. *LaMontagne v. E.I. Du Pont De Nemours & Co., Inc.*, 41 F.3d 846, 855 (2d Cir. 1994). But it does not "alter the substance of a plaintiff's rights or the facts that a plaintiff must prove in order to prevail," and any sub-claim brought under the CPLA must sufficiently allege all elements required at common law. *Id.* at 855-56.

Here, Plaintiffs allege three different sub-claims of product liability under the CPLA: strict liability, negligence, and recklessness. STORZ argues that all three CPLA sub-claims should be dismissed because Plaintiffs fail to plead sufficient facts. ECF No. 40 at 5 ("Plaintiffs' Complaint pleads very few factual allegations and, instead, is dominated by conclusory allegations and legal conclusions."). For the reasons below, I conclude that Plaintiffs have failed to plead sufficient facts to support their theories of strict liability except the design defect claim, which may proceed; and that Plaintiffs have adequately pled their negligence and recklessness theories, allowing those claims to proceed as well.

#### *i. Strict Liability*

Plaintiffs contend that they have pled facts sufficient to sustain a plausible CPLA strict liability sub-claim under four theories: malfunction, manufacturing defect, design defect, and failure to warn. ECF No. 43 at 5. STORZ argues that Plaintiffs' amended complaint "fails to plausibly allege any claim for strict liability." ECF No. 40 at 10.

"In order to recover under the doctrine of strict liability in tort the plaintiff must prove that: (1) the defendant was engaged in the business of selling the product; (2) the product was in a

defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition." *Potter v. Chicago Pneumatic Tool Co.*, 241 Conn. 199, 214 (1997). Under Connecticut law, these elements are required for all product liability claims sounding in strict liability, "whether alleging a design defect, manufacturing defect or failure to warn defect." *Bifolck v. Philip Morris, Inc.*, 324 Conn. 402, 434 (2016).

When evaluating product liability claims, courts in this District have held that "[e]ven under the liberal pleading standards of Rule 8, a complaint generally must identify a *specific problem* with the design or manufacturing of the subject products." *Philadelphia Indem. Ins. Co. v. Lennox Indus., Inc.*, No. 3:18-CV-00217 (CSH), 2019 WL 1258918, at *4 (D. Conn. Mar. 18, 2019).

A. <u>Malfunction Theory</u>

Plaintiffs raise a CPLA strict liability claim under the malfunction theory, alleging that cystoscope sheaths do not ordinarily fracture "in the absence of a defect," and that Defendant's cystoscope sheath was used as intended when Mr. Apuzzo was injured. ECF No. 36 ¶ 19. Defendant argues that Plaintiffs fail to state a claim under the malfunction theory because they do not allege the cystoscope sheath was unavailable for inspection. ECF No. 40 at 12. I agree with Defendant.

Connecticut state law recognizes a "malfunction theory" of strict liability, "which allows plaintiffs to use circumstantial evidence to make a prima facie claim of product liability." *Karazin v. Wright Med. Tech., Inc.*, No. 3:17-cv-823 (JBA), 2018 WL 4398250, at *5 (D. Conn. Sept. 14, 2018) (citing *Metro. Prop. & Cas. Ins. Co. v. Deere & Co.*, 302 Conn. 123, 132 (2011)). The

malfunction theory is available to plaintiffs when they are "unable to produce direct evidence of a defect because of the loss of essential components of the product." *Metro. Prop. & Cas. Ins.*, 302 Conn. at 132. But "proof of an accident alone is insufficient to establish a manufacturer's liability." *Id.* at 136. Instead, "when direct evidence of a specific defect is unavailable, a jury may rely on circumstantial evidence that a product that malfunctioned was defective [when] it left the manufacturer's or seller's control," where (1) the incident causing plaintiff's injury "was of a kind that ordinarily does not occur" absent a product defect, and (2) any defect "most likely existed when the product left the manufacturer's or seller's control and was not the result of other reasonably possible causes not attributable to the manufacturer." *Id.* at 139-40.

Here, Plaintiffs cannot make a plausible claim under the malfunction theory because they do not allege in their amended complaint[1] that they could not access "essential components of the product." *Metro. Prop. & Cas. Ins.*, 302 Conn., at 131-32. Although the Connecticut Supreme Court has not resolved the issue, *id.* at 132 n. 4, courts in this District have held that lack of access to the product is a threshold requirement that must be satisfied for a malfunction theory to proceed. *See Karazin*, 2018 WL 4398250, at *5 ("Plaintiffs may use that alternative theory only where evidence of a product defect is 'unavailable…such that the plaintiff is unable to produce direct evidence of a defect because of the loss of essential components of the product'") (quoting *Metro. Prop. & Cas. Ins.*, 302 Conn., at 132); *L.Z. v. BigAirBag B.V.*, 691 F. Supp. 3d 451, 464 (D. Conn. 2023) ("[C]ourts in this district . . . have generally permitted malfunction theories only when the product was destroyed or otherwise unavailable for inspection."). The operative complaint alleges

[1] Plaintiffs contend in their Opposition to the Defendant's Motion to Dismiss that they "did not have a meaningful opportunity to inspect or analyze the device prior to filing the Amended Complaint." ECF No. 43 at 7. Arguments raised in opposition briefs, but not in the complaint itself, cannot satisfy a pleading burden. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) ("In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference."). Thus, I do not consider Plaintiffs' argument, as it does not appear in their Amended Complaint. ECF No. 36.

that after the cystoscope sheath fractured, the tip that detached was "retrieve[d]" during surgery. ECF No. 36 ¶ 3, which does not suggest that the product here was unavailable for inspection. Plaintiffs, therefore, have not met their pleading burden on the malfunction theory claim, and the motion to dismiss is granted.

B. Manufacturing Defect

Plaintiffs assert a CPLA strict liability manufacturing defect claim. ECF No. 36 ¶ 29. Defendant argues Plaintiffs' manufacturing defect claim should be dismissed because their amended complaint "does not include *any* factual allegations regarding the intended design standards or specifications of the Cystoscope Sheath, nor does the Amended Complaint allege that the Cystoscope Sheath deviated from any manufacturing standards or specifications." ECF No. 40 at 14. I agree.

"A manufacturing defect is a flaw in the manufacturing process which causes the product to deviate from the design standards and intended specifications." *McConologue v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 93, 109 (D. Conn. 2014) (citing *Miller v. United Techs. Corp.*, 233 Conn. 732, 779 (1995)). Courts in this District have held that "[p]ointing to the entirety of the device in question, without more, is not sufficient to state a claim of [a] defect." *See Karazin*, 2018 WL 4398250, at *4; *Lennox*, 2019 WL 1258918, at *4 (dismissing complaint that "contain[ed] no facts indicating the specific component or mechanism that was defective" and failed to identify "even in abstract terms, a particular problem" with the product). The Court cannot, however, "require the plaintiff to possess technical or scientific knowledge about the inner workings of the product." *Leonard v. Gen. Motors L.L.C.*, 504 F. Supp. 3d 73, 95 (D. Conn. 2020). Instead, the plaintiff may plausibly state a manufacturing defect claim by "identifying a specific component of

the product that was allegedly defective and the general manner in which it was so." *L. Z*, 691 F. Supp. 3d 451 at 460.

Plaintiffs have not pleaded enough specific facts to meet this burden. The amended complaint alleges that the cystoscope sheath had a "propensity for metal fatigue and fracture during normal and intended cystoscopy use," ECF No. 36 ¶ 19, and that "the fracture during normal and intended use supports the inference that the device deviated from its intended design and performance specifications, contained a manufacturing defect, or both." *Id.* ¶ 29(d). This allegation identifies a general manner in which the cystoscope sheath was defective, but does not point to a specific component of the device or indicate even in a general way whether the "metal fatigue" was related to any failure to comply with design standards or specifications. The operative complaint simply points to the product's fracture during use and alleges that the fracture itself "supports the inference that the device deviated from its intended design and performance specifications." ECF No. 36 ¶ 29(d). Such conclusory, circular pleading is insufficient to state a manufacturing defect claim. *See L.Z.*, 691 F. Supp. 3d at 460. Plaintiffs do not even suggest that the metal fatigue related to a specific component, such as the tip of the device—which Plaintiffs identify as the component that "detached" during Mr. Apuzzo's procedure. ECF No. 36 ¶ 3. They therefore do not state a plausible manufacturing defect claim. Defendant's motion to dismiss the manufacturing defect claim is granted.

C. Design Defect

Plaintiffs assert a CPLA strict liability design defect claim. ECF No. 36 ¶ 29. Defendant argues that Plaintiffs fail to allege a plausible design defect claim because the amended complaint lacks facts explaining how the cystoscope sheath was defectively designed. ECF No. 40 at 15. I disagree.

A design defect claim alleges a product is "otherwise properly manufactured, but is nonetheless unreasonably dangerous because its attributes can cause an unexpected injury." *Moss v. Wyeth*, 872 F. Supp. 2d 162, 166 (D. Conn. 2012). "A product is defectively designed if: (1) it failed to perform as safely as an ordinary consumer would expect when used in a reasonably foreseeable manner (the 'ordinary consumer expectations' test); or (2) in the case of complex products, the risk of danger inherent in the design of the product outweighs its utility (the 'modified consumer expectations' test)." *Id.* "Connecticut courts have traditionally taken a liberal view to design defect claims." *Id.* at 169. In particular, courts have held that "[i]t is not necessary that the plaintiff in a strict tort action establish a specific defect as long as there is evidence of some unspecified dangerous condition." *Id.* (internal quotations marks omitted).

Admittedly, the amended complaint is sparse and would benefit from more factual specificity. But when the facts alleged are viewed in light most favorable to Plaintiffs, given the cystoscope sheath's unexpected fracture during Mr. Apuzzo's procedure, ECF No. 36 ¶ 3, even "in the absence of abnormal use, misuse, alteration, or secondary causes, and while the device was being used in accordance with its intended purpose and instructions for use," *id.* ¶ 19, given that such a fracture "does not ordinarily occur in the absence of a defect;" and given that the Defendant had "received complaints and other notice, including from healthcare providers, of metal fatigue and fracture" during normal use of the product, *id.* ¶ 29(o), I can reasonably infer that the device "failed to perform as safely as an ordinary consumer would expect when used in a reasonably foreseeable manner." *Moss*, 872 F. Supp. 2d at 166. This is sufficient to state a claim at this stage, albeit barely. *See DiBlasi v. Smith & Nephew, Inc.*, No. 3:20cv566 (MPS), 2021 WL 619509, at *2 (plaintiff's allegations that "the patellar component of the defendant's knee implant loosened, causing a visible bulge in his knee and pain" was enough to state a colorable design defect claim).

*Mals*, 2020 WL 3270835, at *5 (citing that knee replacement failed within two months after the implantation as ground for denying motion to dismiss design defect claim). Accordingly, STORZ's motion to dismiss is denied with respect to the design defect claim.

D. Failure to Warn

Plaintiffs raise a CPLA strict liability failure to warn claim in their amended complaint. ECF No. 36 ¶ 19. Defendant argues that Plaintiffs' failure to warn claim should be dismissed because it is based on conclusory allegations. ECF No. 40 at 16. I agree.

"Strict liability applies to failure to warn claims where adequate warnings or instructions were not provided and where the harm suffered would not have occurred had adequate warnings been given." *Karazin*, 2018 WL 4398250, at *5 (citing *McConologue*, 8 F. Supp. 3d at 100).

Here, Plaintiffs allege that STORZ "failed to warn . . . end-users that the [cystoscope sheath] was dangerous," ECF No. 36 ¶ 29(e), "failed to provide adequate warnings regarding the [cystoscope sheath's] propensity to fracture," *Id.* ¶ 29(f), and that "the warnings and instructions . . . which accompanied the [cystoscope sheath] were inadequate and failed to provide sufficient notice to medical providers…of the dangerous propensities" of the product." *Id.* ¶ 29(h). They further allege that "had STORZ provided adequate warnings regarding the [cystoscope sheath's] propensity to fracture . . . Plaintiff's injuries would not have occurred." *Id.* ¶ 29(g). Each of these allegations is conclusory. Plaintiffs allege no specific facts as to any warnings Defendant did provide and how they were allegedly deficient. *See DiBlasi*, 2021 WL 619509, at *3 (dismissing a failure to warn claim on these grounds); *L.Z.*, 691 F. Supp. 3d, at 465 (same); *Leonard*, 504 F.Supp.3d, at 97-98 (same); *Lennox*, 2019 WL 1258918, at *3 (same). The motion to dismiss is therefore granted as to the failure to warn claim.

E. Negligence

Although the amended complaint does not expressly assert a negligence claim, it contains allegations that sound in negligence, *see* ECF No. 36 ¶ 29 i, j, k, l, m, o, and p, and the Defendant's motion addresses a negligence claim, ECF No. 40-1 at 18. The amended complaint alleges that Defendant was negligent because it failed to take "reasonable steps to investigate, recall, restrict, or otherwise correct" the cystoscope sheath's alleged defect, ECF No. 36 ¶ 29(p), in response to "complaints and other notice, including from healthcare providers, of metal fatigue and fracture occurring in the [device] during cystoscopy." *Id.* ¶ 29(o). Plaintiffs further allege these complaints were received "prior to [Mr. Apuzzo's] September 29, 2023 procedure," *id.*, and his injuries were suffered "as a direct and proximate result" of STORZ's failure to respond. *Id.* ¶ 30. Defendant argues that Plaintiffs do not meet their pleading burden for a negligence claim because they plead "generalized allegations and conclusions" that "lack the specific facts necessary to state a plausible claim for negligence." ECF No. 40 at 20. I find that the allegations regarding the Defendant's failure to take investigatory or remedial steps in response to complaints from other healthcare providers about fracture during normal use are specific enough to plead a plausible negligence claim.

Under Connecticut law, the elements of a cause of action for negligence are duty, breach of that duty, causation, and actual injury. *Lamontagne v. E.I. Du Pont de Nemours & Co.*, 834 F. Supp. 576, 588, 592 (D. Conn. 1993). The requirements applicable to ordinary negligence actions "are also applicable to negligence claims against product manufacturers" under the CPLA. *Id.* Under Connecticut law, "[t]he test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of

whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." *Gazo v. City of Stamford*, 255 Conn. 245, 250 (2001) (quoting *Mendillo v. Board of Education*, 246 Conn. 456, 483-84 (1998)).

Again, while the Amended Complaint would benefit from more factual specificity, the Plaintiffs have met their pleading burden to sustain a negligence claim. The complaint alleges that before Mr. Apuzzo's procedure, STORZ received complaints from other healthcare providers about metal fatigue and fracture during normal use of the product. These allegations are enough to make it plausible that "the [Defendant] knew or should have known that [their product] was in an unreasonably dangerous, defective condition and yet continued to sell it without warning." *Leonard*, 504 F. Supp. 3d at 94. By alleging a specific fact regarding the manufacturer's conduct, Plaintiffs have distinguished their negligence theory from others that courts have dismissed as conclusory. *See L.Z.*, 691 F. Supp. 3d at 466 (dismissing negligence product liability claim that set forth "no allegations from which the Court can infer the Defendant breached any duty owed to her"); *Mals*, 2020 WL 3270835 (dismissing where "Plaintiff's complaint lacks any detail regarding Defendant's alleged negligence."); *Phila. Indemnity Ins. Co.*, 2020 WL 705263, at *6 (D. Conn. Feb. 12, 2020) (dismissing negligence claim when plaintiff failed to plead "any factual content that would support a reasonable inference of Defendant's negligence"). Defendant's motion to dismiss the negligence claim is denied.

F. <u>Prayer for Relief for Punitive Damages</u>

The Defendant also argues that "Plaintiffs fail to plausibly allege reckless conduct to support their prayer for relief for punitive damages," ECF No. 40-1 at 21, and asks me to "dismiss[]" the prayer for relief for punitive damages. "[S]everal courts have held," however, "that the prayer for relief is not even pertinent on a Rule 12(b)(6) motion, noting that the requirement of 'a short and plain statement of the claim showing that the pleader is entitled to relief'"—the

language of Rule 8 explicated by the Supreme Court in *Twombly* and *Iqbal*—"is set forth in a separate subparagraph from the requirement of a prayer for relief," *Connecticut v. Sandoz*, 2024 WL 4753308, at *2 (D. Conn. Nov. 12, 2024) (citing Fed. R. Civ. P. 8(a)(2) and 8(a)(3) and cases). The subparagraph of Rule 8 governing the prayer for relief does not require "a short and plain statement," the language the Supreme Court has construed to impose a plausibility standard; it just requires "a demand for the relief sought." Fed. R. Civ. P. 8(a)(3). Thus, it does not matter at this stage whether Plaintiffs have alleged facts to support a "plausible" punitive damages claim. Even if the plausibility standard applied, however, the complaint's allegations of recklessness would be enough to satisfy it. As noted, Plaintiffs allege that STORZ failed to respond to notice from healthcare providers that its cystoscope sheaths were fracturing, ECF No. 36 ¶ 29(o), and that the company continued to market and distribute the device despite this notice, *id.* ¶ 29(p), thereby making a "conscious decision to disregard known fracture risks." *Id.* ¶ 29(q). They further allege that "STORZ's conscious decision to disregard known fracture risks . . . constituted a reckless disregard for the safety of product users," entitling them to punitive damages. ECF No. 36 ¶ 29(q).

"In Connecticut, a plaintiff in a product liability action may recover punitive damages if she proves that the compensable harm suffered was a result of the defendant's reckless disregard for the safety of the product's user." *Izzarelli v. R.J. Reynolds Tobacco Co.*, 767 F. Supp. 2d 324, 325 (D. Conn. 2010) (citing Conn. Gen. Stat. § 52-240b) (punitive damages allowed where product seller showed "reckless disregard for the safety of product users, consumers or others who were injured by the product"). Under Connecticut law, recklessness "is more than negligence, more than gross negligence" *Dubay v. Irish*, 207 Conn. 518, 532 (1988), and "tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Matthiessen v. Vanech*, 266 Conn. 822, 833 (2003).

The same factual allegations may support a claim of both negligence and recklessness. *Craig v. Driscoll*, 262 Conn. 312, 341 (2003).

When construed in the light most favorable to the Plaintiffs, before Mr. Apuzzo's procedure, STORZ was aware of but failed to respond to notice that its cystoscope sheaths were fracturing during normal use; Plaintiffs' allegations are enough to sustain a recklessness claim. *See Lutes v. Kawasaki Motors Corp., U.S.A.*, No. 3:10–cv–1549 (WWE), 2011 WL 1399639 (Apr. 13, 2011) (sustaining a claim for recklessness on the grounds that defendant "knew or should have known about the risks associated with [their product] and failed to address the situation"); *Wasilewski v. Raymond Corp.*, No. 3:10-cv-1857 (WWE), 2012 WL 2190779 (D. Conn. June 14, 2012) (defendant "deliberately continued to sell" their product despite receiving "reports of ongoing equipment failure"). Defendant's motion to "dismiss" the prayer for relief for punitive damages is denied.

B. <u>Count Two (Loss of Consortium)</u>

Count Two of the Amended Complaint asserts that "as a direct and proximate result of the injuries sustained by [Mr. Apuzzo]," Mr. and Mrs. Apuzzo's marital relationship "has been impaired and diminished." ECF No. 36 ¶ 37. Moreover, Mrs. Apuzzo "has suffered and will continue to suffer the loss of [Mr. Apuzzo's] services, care, consortium, and society." *Id.* at ¶ 38.

Connecticut state law treats loss of consortium claims as derivative causes of action to products liability actions under the CPLA. *Lynn v. Haybuster Mfg., Inc.*, 226 Conn. 282, 298 (1993). Plaintiffs and Defendant both acknowledge Mrs. Apuzzo's claim is derivative of Mr. Apuzzo's CPLA claim in Count One of their Amended Complaint. ECF No. 36 ¶ 39 ("Said losses have been caused by the negligence, carelessness, recklessness, and statutory violations of STORZ as set forth in Cause of Action I."). ECF No. 40-1 at 21.

Therefore, Mrs. Apuzzo's loss of consortium claim may proceed as a derivative claim of those of Mr. Apuzzo's claims in Count One I have not dismissed.

## V. Conclusion

For these reasons, STORZ's motion to dismiss (ECF No. 40) is GRANTED as to the malfunction, manufacturing defect, and failure to warn claims and DENIED as to the design defect and negligence claims. The motion is also DENIED with respect to the prayer for relief and with respect to Count Two.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
August 25, 2026